20-2269. And we're happy to have counsel. We wish we could see you in the courtroom, but we're happy to be doing this via zoom. Same rules apply to a zoom conference 15 minutes per side will give appellants counsel the opportunity to reserve some time for rebuttal. And so without further ado, I'll be keeping time, I suggest you do so too, just so you can pace yourself and be sure you get in what you want to get in. So, appellants counsel Mr Charles, we'd be reserving any time. Yes, Your Honor, if it pleases the court may I reserve three minutes. That is granted. Okay, you may proceed when, when you're ready. Thank you, Your Honor, it may please the court. I'm George chalice and I appear for the appellant Netherlands Shipping Corporation. The parties come today to present a question of first impression but happily for all of us, it's not difficult question. Indeed, the case law and the undisputed facts, make clear that the district court made a mistake. I think I heard the court in an earlier argument use the expression the district court shanked it well, Judge Andrew shanked it here in finding that that district court lacked subject matter jurisdiction. It did, and it does. And that's because the claims presented to the district court falls squarely within the district courts maritime and Admiralty jurisdiction. Here we're asking that the decision be reversed in the matter remanded to proceed on the merits. We understand that we understand the positions we've, we've been involved with the case not not as deeply as you folks have but would you speak to us for just a moment here about the, the two separate claims that are are are being made right there's a statutory cause of action in play, as well as the contractual one so the statutory cause of action. Yes. The government's argument, as I understand it, is that your section 1904 H claim isn't cognizable as an independent cause of action. And, and it doesn't waive sovereign immunity. And, and therefore it has to be brought in the Court of Federal Claims. What, what are you relying on in the statute to say there's a clear waiver of sovereign immunity. Right. Well I think the position Your Honor that the statute. We've argued to the district court that 1910 section 1910, which gives a citizen suit provision that allows you to proceed before the district court is the, the statutory authority for the position but I go. One step before that saying that the Congress has already waived the government's sovereign immunity, because the nature and the substance of this claim is salty and flavored falls within the courts maritime and amnesty jurisdiction, because it's the delay of a vessel in navigation. Well that's that's pulling the statutory claim into the other claim right. I mean, well, are you saying, are you saying. Anytime there's, there's that kind of a claim that that's an independent basis for jurisdiction doesn't matter what the statute says. Yes, correct. And I'll say to the ASTA engineering case in the Court of Claims in 2000, just a couple of nuggets that the court wrote that the jurisdiction of the district courts over actions involving maritime contracts exists at the expense of the jurisdictional grants of the statutory claim in conjunction with the Tucker act and we say no you have to read the statutory claim in conjunction with the courts constitutional grant its original jurisdiction with the suits and Admiralty Act with 28 USC 1333. And the fact that at no time after the enactment of the suits and Admiralty Act as Congress expressly conferred Admiralty jurisdiction on the US Court of Federal Claims courts predecessors which exercise Tucker act jurisdiction. Congress waived sovereign immunity with respect to maritime matters, so that the US could be sued in the district courts. So, there is some overlap on the jurisdictional hook for both claims, but what we say is that the government in the district court jumped over the constitutional grant to the district courts subject matter jurisdiction ignored it, and then went to the Tucker act, you'd have to. Well, in your brief you seem to argue that the parties could and you cite the the settlement agreement as a basis for jurisdiction, but if there's not jurisdiction it wouldn't matter what you and the government said on a piece of paper would it. Well, it does, Your Honor, and I wanted to step back one second it's not a settlement agreement, it's a negotiated contract between the parties, call it call it what you want it's, it's a negotiated document between you and the United States. Isn't it a fundamental fact that parties can't confer jurisdiction on the federal it doesn't matter whether you and the other side say yeah we want this in federal court if there's not jurisdiction there's not jurisdiction if there is there is, and that stands independent of anything that the two of you happen to say in an agreement right. I think that's correct, but I'd like to explain one one problem. If you stop the analysis of, well, you can't confer jurisdiction there's no jurisdiction so therefore go to the court of claims, the government's told the district court, and you can find it in the appellate Okay, I appreciate, I appreciate a straight answer there. So, what I'm saying to the court here is that makes no sense that you can't have an agreement and negotiated resolution that's memorializing the party's rights and obligations right provide in the contract. Some language that said well if there's a dispute, you're going to go to the district court of the district of Delaware. And if you're bringing the breach of contract claim you bear the burden of proof, but when you actually try to exercise that right. We're going to tell you you have to go to a court and then when we get there we'll say we never waive sovereign immunity and your claim goes into a black hole. In fact, it's an empty right. All that. All that may be true. My question to you is I hear you saying yes. If there's not the question of jurisdiction doesn't depend on what you and a government lawyer agreed to. Right. It just can't, it can't depend on that right. I agree with that statement your honor, but at that statement, in and of itself, maybe it is an incorrect way to frame the issues that are before the court now, because it's not a matter we're not basing our argument on what the terms of the agreement say, and we raise that argument to support that this is where the parties intended to be because that's where they're supposed to be, if that makes sense. There should be no dispute that a contract relating to the operation of the ship that the employment of seafarers, the maintenance of the seafarers is salty and flavor. There's no dispute in the government doesn't dispute about the constitutional grant of admiralty jurisdiction to the district court, what they're now saying after by the way litigating one of these cases cases through appeal in the district of DC. Is it well, you know what, maybe we should have raised the subject matter jurisdiction argument there. So we'll try it here. I mean, a court's already heard one of these disputes, the court satisfied itself in the district of DC that it had subject matter jurisdiction rendered a decision that went on appeal to the circuit court. So I think to limit the inquiry to, well, you can't agree and convert jurisdiction by agreement, I agree with that but that's not what happened here. You want to, you want to speak to the Fourth Circuit's angelics opinion and how that affects your case. Absolutely. Angel X. It was Angel X. So, the government got a black eye in the district court in the eastern district of Virginia by Judge do more he had some very scathing language about how the Coast Guard's actions were the worst. Most egregious abuse of discretionary authorities ever seen in 30 years as a federal judge. The government took an emergency appeal, we traced out to Lewisburg West Virginia when the Fourth Circuit judges were having their conference. We went to a historic courthouse that had spittoons at the end of the aisles was pretty neat actually. And a heavy hitter from Washington came in and said this is something that's really important to the to the national security and to the national interest. And by the way, the Coast Guard has the authority unreviewable discretionary authority to hold up a ship, and not the court, the court can't tell you the terms to let the ship go. The Angel X Fourth Circuit decision said, that's right, you have an after the fact remedy, where you can bring a claim for unreasonable delay. Right. Why should we not follow that. Well, we should follow it and we should let it go. That, as I understood the Fourth Circuit's decision. Well, I'm sorry, not the Fourth Circuit's. I got my angel X's back backwards, the DC circuits Angel X got to Angel X is going on. The, the DC circuit. They, they ruled in a way that's contrary to your interests right. No, Your Honor actually it's not what so that was a subject that was not a subject matter jurisdiction dispute that was a dispute saying it was a summary judgment that because the parties that agreed certain terms, because there was no evidence in the record of actual damages. There was no claim presented that was going to go beyond a summary judgment standard. Again, the government says, Hey, don't pay attention to drive by jurisdictional rulings, and I hear you saying something not that different which is that case just doesn't really matter. Is that it. Well, in, in, I think that's correct on one important point to bear in mind, Angel X isn't factually analogous because the whole issue in that case was that there wasn't an agreement there wasn't a contract between the parties, right, there was no agreement that could possibly be agreed. And so the challenge to judge do more was about. Are we back to whether you can agree on jurisdiction. No, Your Honor, I'm not saying I'm saying the nature and the substance of the contract that issue here is salty, it's a gives rise to a maritime claim, the 1904 age claim for the delay of a vessel and navigation. There's been plenty of cases that talked about. And I want to ask you about since Judge Jordan brought mentioned it the Fourth Circuit decision. And I guess the operative holding in that case was that that withholding of clearance under section 1908 he was not maritime now, I guess you say that it's true that there's no. There was no agreement in the Angel X case but do you dispute that withholding clearance under section 1908 he is not maritime. Yes, Your Honor, I do because that's that's not quite a full understanding of the issue that the Fourth Circuit looked at whether or not the supplemental Admiralty rules gave us as petitioners, the right to the absolute right to post a bond for the release of the vessel. And what the Fourth Circuit said was, no, this isn't a civil arrest under Rule C and it's not a civil attachment under Rule B so therefore you don't get the benefit of the corollary rule in Rule E. This is an enforcement action by the Coast Guard, and they don't have to let the ship go. It stops way short of the question of, now you go to the next step, you do a negotiation you come to a contract. Now here this court's different because this court needs to look at the, the nature of the contract. Right. And again I say the contracts maritime. I say that the withholding of a vessel's departure clearance is a maritime, and I point the court to the Supreme Court case. Hold on. So is this a pretty so is. Let me put this another way. I mean, so is withholding of clearance not maritime. No, it is maritime. In fact, it is nothing more maritime it's the Coast Guard, that has the ability to follow up then is, is, is all of the APPS maritime. Absolutely. The act prevent pollution from ships talks about the regulation of vessels and navigation and whether or not they are operating in violation of those regulations while in US waters. So is the Fourth Circuit just wrong. I don't think that the Fourth Circuit addressed this issue and the issue that it addressed was slightly off kilter it was whether or not the claim that the government wrongly withheld the vessel and didn't give us reasonable terms falls in the, in the district court's maritime jurisdiction and the Fourth Circuit relied on a case called speed mining and they say this is a discretionary function, given to the Coast Guard an expert agency in these matters, and there's no law or standard which the district court can review it. So it's a very complicated administrative rule, but it doesn't bear on the issues in this case. We're about out of time, Judge Jordan, do you have any other questions. If you let me, I just want to pursue this angel x thing for just another moment. Absolutely. Here is, here's the language from angel x Fourth Circuit angel x quotes 1904 H, then talks, then turns to Admiralty jurisdiction and says, after noting that an interim suit, obviously is going to have Admiralty jurisdiction says appellees unreasonably stretch the law to classify this matter as an interim action and then as Judge Garris was noting, they say that section 1908 he, which has to do with this withholding of the departure opportunity is not something that's governed by Admiralty. Right, so, so, no. What is, is it, is it the fact that they were talking about in REM versus not in REM is that the difference here how is it you're distinguishing and saying, forget what the Fourth Circuit said, yeah, that's an easy one judge. So, the arguments in the district court in the Fourth Circuit rely basically were based on the following that the Coast Guard's withholding of the vessels departure clearance was a functional arrest or, or attachment of the vessel. So, we were arguing that under this the supplemental Admiralty rules that we have the absolute right to post the bond with the ship going you don't get the government doesn't get the ability to ask for more than just the bond and there was arguments and citations. So is your, is your assertion here we're different because we never said that this was an arrest and this is in REM is that the basis on which you're distinguishing the case. No, I mean in part I think that that is a correct statement but that's not the basis of the argument. What we're saying here is that the Fourth Circuit never looked at the question of whether or not the withholding of a vessels departure clearance. It gives rise to the district courts Admiralty jurisdiction when you go and assert your later after the fact remedy, which is the Fourth Circuit this is available. Yeah. So, just so that I'm clear. Yeah, you're saying the Fourth Circuit narrowly looked at whether something was an arrest, and therefore in REM, independent of whether something is arrested in REM, we're saying this contract sounds in Admiralty sounds maritime jurisdiction of the court. And that's why the Fourth Circuit is not different, or if I misunderstood what you're saying. No, I think that's right, Your Honor, and I'll just make one point on this. The Fourth Circuit made a point of saying that the Coast Guard exercising the ability to withhold the departure clearance is an enforcement action, not a supplemental rule B or C and rest or attach that were just that they were making, not that it wasn't an Admiralty matter that it wasn't the way it was being argued by the parties at that time in that court. I got you. Thanks. I hope that's clear, just to record you have anything. Okay, thank you. Council will get you on rebuttal, and we'll hear from your adversary. May it please the court and Murphy for the United States. Your Honor, the district court was entirely correct that it had no jurisdiction of either the contract claim or the claim for statutory damages. And just just to get to this point about whether the, whether the apps is maritime. The question is whether the district court has jurisdiction over it and the district courts jurisdiction is over civil cases of Admiralty and maritime jurisdiction if we're talking about Admiralty and maritime jurisdiction. So I think it's a mistake to think of as Mr. Choi suggested that an entire statute can be salty. I understand that this salty without without worrying whether an entire statues salt or not, let's talk about whether this, this case is salty here. You have an agreement, and in that agreement representatives of the United States, say things like the United States agrees that the criminal and civil penalty claims the United States against the vessel and REM shall attach the vessels release security as provided pursuant to the federal rules of civil procedure Admiralty maritime claim supplemental rule five, excuse me rule five. It isn't that a direct statement by the United States government through an authorized representative a Coast Guard officer that this is a maritime case this is an Admiralty case it's it's properly viewed as an Admiralty case it's governed by that maritime Admiralty supplemental rules to the federal rules of civil procedure. No, not at all your honor and there's several reasons. What does it mean for the United States the same document that says this is going to be the releases security is provided pursuant to those specific Admiralty and maritime rules. So, so what happened. So first of all I'd just like to explain that this was raised in councils reply brief so we didn't have an opportunity to actually address this in our briefing so I may give you a slightly more fulsome reason. There is a principle that if there is a maritime claim against the ship. And then the parties substitute money for the ship that when the vessel goes and the money attaches to the ship that that the claim remains maritime that it keeps its maritime claim and I think that's councils argument in this case here. I think so too. Right, exactly. So, but that claim doesn't arise because there is no maritime claim against the vessel in this case your honor. The claim is a claim to pay a criminal penalty. If you look at page 55 of the joint appendix you'll see the actual bond in the case. This says, I'm reading from your document that criminal and civil penalty claims. It was understood by the federal government when it wrote this one. And I'm pretty sure that Mr Chalice's client didn't say here you sign this government because we've got the whip hand in this matter. This was presented by the government right the government drafted it the government presented it and said, we agree that criminal and civil penalties are going to be handled pursuant to the admiralty and maritime rules of civil procedure. I understand we own it, it says in RAM. In the context of this case that does not refer necessarily to a claim that would sound in maritime and here's why. As I say, there's no actual maritime claim against the vessel. The only way that the claim against the vessel in RAM would arise in an app situation is if the owner doesn't pay a criminal penalty and the United States would would actually go after the vessel. Yeah, but what regardless, regardless of whether it's in REM or not. Well, are you saying that if, if there's not a specific in REM claim, there's never admiralty jurisdiction is an admiralty maritime jurisdiction based in just what the United States Supreme Court said in Kirby, the protection of maritime commerce. Exactly, Your Honor, it's about maritime commerce and this really has this, this is a criminal. What this contract is doing is it's like providing for a criminal penalty and for the, for the prosecution of a crime. So my second answer to your question is that even if, even if in paragraph nine, the government was recognizing some admiralty flavor and we're really not that the principle that the admiralty claim that the admiralty claim attaches to the money and makes the claim against the money admiralty just doesn't apply here because the claim that was going to attach to the ship is not a maritime claim so I, I just want to. So, so you're the government's the government's position is it could have held that ship for a for 10 years, and that wouldn't affect maritime commerce, and it wouldn't under under Kirby it wouldn't matter. You can hold you can hold a ship and you can refuse to let it out of port for as long as you feel like it, as long as what you're saying is we're talking criminal law here, it's got nothing to do with maritime commerce. No, that is emphatically not a position. What is your position. So our position is the question is not whether the overall transaction affects maritime commerce, it's not whether from the perspective of the vessel this affects maritime commerce Kirby is absolutely clear what matters is whether the contracts in referred to in this case they involve things like the carriage of good the carriage of passengers marine insurance necessaries for ships cargo, just pay attention to this contract, let's look at. Okay, so this contract you have this contract. If you read the entire contract, it provides for jurisdiction over the criminal case, it provides for the care and housing of criminal witnesses and defense in the United States in hotels, eating United States food. It provides that the evidence in the criminal case is authentic, and it provides a bond for a criminal penalty and at no point. Does any provision in Kirby's language, make reference to maritime transactions or services because really isn't a commercial contract the statement that the United States agrees that all criminal penalties claims of the United States as against the vessel is as provided will be handled as provided according to the maritime claims rules of the civil of the supplemental rules for civil procedure. That's not a that in the United States view that's just got nothing to do with whether this is a maritime contract. You're, let's assume for the point of argument let's assume that that provision clause nine that in round claim against the vessel. Let's say that is completely maritime which I can, I disagree with. But if that were true. There's another part of Kirby that's relevant here, which is that, you know, if there is an insubstantial part of the contract which is not maritime, then it doesn't matter it can still be a maritime contract and vice versa. Is it is it insubstantial that the whole motion of this agreement was to get the ship out of port, the whole point of this was, look, we'll say what we'll say whatever you want, just let us go. Right. Yeah, that seems to be that seems to be what was going on here. We got your ship and you're not going anywhere. Look, give us the document will sign it will pay the money will put the money up just let the ship go. You're saying that, that, that, that, which infuses the case has really nothing to do with maritime commerce, your ad know it's not whether the agreement between the parties, or what you're looking at it from the perspective exclusively of the vessel The vessel says, I want to go they've got me I want to engage in commerce. If you read our brief you're like we don't care we don't care what you do, it's like we just want to exercise our sovereign interest and prosecute this crime. This is not a commercial contract. This is a contract between the sovereign and a criminal defendant. It does not have reference to maritime services or transactions. If you look at the actual contract. And I really urge you to look at the contract itself and what it provides and the obligations on the parties. It says nothing about what the vessels going to do after the vessel could bob around in the Delaware Bay forever, it could be sunk and be a habitat for And the fourth circuit decision and Angelix is important this, the actual withholding of the departure clearance is not an in rem action against the vessel that doesn't create a maritime assume that's assume that's true. And assume this isn't an in rem action. Does this Fourth Circuit's Angelix speak to the point that that your opponent is making at all. If all that the Fourth Circuit said in Angelix is quote appellees unreasonably stretch law to classify this matter as an in rem action, and everybody here agrees that this is not an in rem action. Does Angelix speak to this case at all. But I don't think so. So I don't think Mr chalice is necessarily going to agree. I don't want to speak to him. He's right there. But it's the in rem and the Admiralty rules that would make this maritime and one of the reasons that it's not that there's no maritime claim against this vessel at all. The criminal penalty isn't maritime. You know the withholding of the departure clearance isn't maritime. And so that's why when you put you take the claims and you attach them to the to the money. That's not an Admiralty claim. Obviously the government's trying to wrap up all of its potential possible liability and fill in everything. But the in fact what paragraph nine is saying we have the money, we're going to take any claims that we could have had against the vessel and Ram, because the apps allows for that. So that just in case we have someone who won't agree we can actually go to the ship. So what was the purpose of agreeing that that you would be handling your disputes in the District of Delaware, any dispute between the United States and owner operate regarding payment shall be submitted to the United States District Court for the District of Delaware. Now, everybody agrees you couldn't, you can't confer jurisdiction where it doesn't exist. But isn't that evidence, doesn't that reflect an understanding about the law on the part of the United States, because it's just just ignorance and drafting. No, no, no, no. So, so that provision comes up in the first part of the agreement which has to do with the terms like if there's a violation how the bonds going to be paid out in that provision your honor Netherlands doing the paying, and we are doing the suing, if there's a breach so it's going to be a claim. So, so your position is, if, if we have a claim, we can bring it in Delaware, if you have a claim, you got to go to the court of claims, that's the way your contract works. I know I gotcha, I got your position under 28 USC 1345. There is federal court jurisdiction when the United States brings a claim so we can bring this claim. I know I got you have a monetary claim against the government, a lot of different rules apply and this, this is, this is exactly it, we get there is jurisdiction. I got you. Any dispute doesn't mean any dispute. It means any dispute that we bring against you. That's how you read that document. Well, any dispute under that paragraph that involves money, right, is any dispute under that paragraph that involves money is going to be and it only applies to that paragraph is going to be us versus Netherland. And for the other ones if that the thing with this case your honor is that it's a monetary claim, and it's the claims for money against the United States that are controlled by the Tucker Act so yeah I think one of the possible reasons that learning Council failed to spot the jurisdictional issue in Angelix one is that that case started out with like an APA claim agglomerated onto the, onto the, onto the claim so anyway but then that's beside the point that the fact is that it's asymmetrical when you're And in this case, the contract has no maritime elements the district court was entirely correct about that. It's not a commercial contract it has nothing to do with goods or passengers or ships or marine insurance, it has nothing to do with ships, not not the ship, as such. Go back to, you know, it's like Kirby's about. I mean there's so many maritime contracts and in this case and none of them looks even remotely like this. I mean they're all about marine insurance so there's even like a price cases like this is an entirely different animal, and it's terms and provisions and the obligations of the parties relate to the prosecution. The ship is there as a criminal defendant it's not there because it's selling bananas to the United States. And that makes all the difference it's just a regular criminal case. I just like to respond to this, the point that you were discussing with Mr chalice about section 1904. And that is, it's true that the missing part of the 1904 claim, I'm sorry, I say I'm out of time. Well, go ahead. I'm interested in what you're saying. Yeah, the missing part of the 1904 H claim is the waiver of sovereign immunity. And, I mean, I don't believe it's, it's, it's for the similar reasons as the contract place, it's, it's not maritime anyway but even if it were there would be no immunity waiver for that claim. And so that's why the Tucker Act waiver provides both press a court with content jurisdiction, and it waves the immunity from the government's damage suit for damages against the government. Thank you. Thank you counsel, Judge Jordan Do you have anything more. No, no. And Judge to Rica. Okay, thank you counsel. We'll hear from your adversary. Yes. Yes, Your Honor, I have four brief points I'd like to make I'll do my best to speak quickly to get them all in. As a, as a fun note, when Miss Murphy talks about learning counsel from Angel X, I believe she was my opponent in that case. So, we have a lot of history and she's a very good lawyer. But the court my first point here is the court that this court looks at what Judge Andrews wrote at the appendix at page 39. He, sorry, the appendix at page nine. He writes that the principal objective of the contract is to get the ship moving he writes the principal objective of the agreement is to permit the ship's departure clearance. Right. How is that not in the protection of maritime commerce. If you look to the Kirby case and you look to the cases that have interpreted the one I cited was flame. It talks about a contract that relates to a ship in its use or commerce or navigation and navigable waters or transportation by sea or maritime employment is subject to maritime law. And the case is one of Admiralty jurisdiction. This falls squarely in there now, just because the government gets the benefit of being able to prosecute a case and have witnesses who by the way are seafarers that the agreement itself requires us to continue to employ under a seafarers contract. It's not a binary choice. It could be a maritime contract that gives some benefit to the government. My second house, would you, would you speak to Miss Murphy's assertion that this is distinct and different from any kind of maritime case, because it's a criminal prosecution, that makes it qualitatively different. It's not about maritime. It's about a criminal lawbreaker being held to account. And if you've got a claim under section 1904 H. That is something you can take to the court of claims. Well, look, I can't believe the government's at advancing that are without in a straight fit. Well believe it because she did it. So what's the answer to it. Well, I understand. Well, if you look at the government's own resource material and we cited it in our brief it's the US Coast Guard marine safety manual. Section I.1.a US government agencies the first line says US maritime law enforcement efforts involve many different agencies blah blah blah maritime law enforcement efforts that's what this case is about. Section I.1.a.1 talks about the customs holds on the vessels it says the Customs Service will normally withhold or deny clearance based upon a request from the Coast Guard, in order to ensure vessel compliance with shipping laws and international conventions marbles International Convention, it's intended to protect the marine environment but balance that ambition with with a guarantee that you don't unduly delay best the apps, which is the legislation domestic legislation that implements the treaty it's not self executing has the same safeguard that you can't unduly delay a vessel, the Fourth Circuit tells us yeah if they do, you can go under 1904 H get your get your damages, right, if you show that it was unreasonable delay. Okay. Now, with the court asked asked some questions about the bond and the language about really, that's not by mistake and I think it's important if the court will allow me just a few seconds. Right. The reason why the government attaches the bond, as if it's the vessel, because if it was just to answer the question about it's just a criminal case. If it was just a criminal case, and the government gets the judgment, they're a judgment creditor. Right, but in the maritime world vessels are subject to lots of lean claims first preferred mortgages seafarer wages personal injury claims that provision of necessaries, all that would prime, just a general judgment credit. So the government is playing this thing like pretty fast and loose. They want the benefit of the maritime rules, they want the benefit of the amnesty protection of a lean claimant, but they don't really want to say that because it would give up the ghost and we'd be having a fight about the unreasonable 36 delay 36 day delay of the vessel, Delaware, which by the way, gives rise to damages, all of which are salty cargo claims charter party claims claims for port expenses seafarer wages, providing for the maintenance of the seafarers getting provisions to feed these guys to bring in replacement crews to put crew ashore, continuing to employ them continuing to ensure them. These are all maritime claims. Now, so you're over time by now but if you had if you wanted to know a couple of more seconds if there's something you didn't get in. I suppose we'll hear you. No, no, you're honest I mean, this is a 12 page document that the government gives it to you on a ticket or leave it basis right. If they have the greater bargaining power they know what they're writing. If there's any ambiguity it's got to go against them and by the way, unlike nine or 10 of those 12 pages. They're all admiralty obligations, they're all maritime obligations, release of the ship, the security, standing in place of the ship, the control of the seafarers the provision for the seafarers the insurance the maintenance the employment, etc so forth. This could not be more salty. Okay, thank you counsel, Judge Jordan, do you have anything more. And just record anything. Okay, thank you. Well we thank counsel for their excellent arguments and briefing will take the case under advisement.